**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**
NORTHERN DIVISION
TOWER II, 9TH FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND 21201-2705
TEL:  (410) 962-3962
FAX:  (410) 962-3976
TOLL FREE: (855) 213-8450

JAMES WYDA                                                                                          SEDIRA BANAN
FEDERAL PUBLIC DEFENDER                                                       ASSISTANT FEDERAL PUBLIC DEFENDER

May 21, 2026

The Hon. Stephanie A. Gallagher
United States District Judge
District of Maryland
101 West Lombard Street – Chambers 7C
Baltimore, MD  21201

   Re: *United States v. Ashley Graybeal*
      Crim. No. SAG-25-188

Dear Judge Gallagher:

The Defense submits this letter in support of a sentence of 15 years' incarceration followed by 5 years of supervised release as the sentence that is sufficient but not greater than necessary to fulfill sentencing goals under 18 U.S.C. § 3553(a). Ms. Graybeal pled guilty to one count of sexual exploitation of a child under 18 U.S.C. § 2251(a) pursuant to a Rule 11(c)(1)(C) plea by which the parties stipulated to a sentencing range between 15 to 20 years' incarceration. With the C plea range, both parties agree that a substantial downward variance from the lifetime guidelines is appropriate.  Sentencing is scheduled for June 4, 2026.

**Introduction:**

The mandatory minimum prison term of 15 years is sufficient to punish Ms. Graybeal for her conduct. We see a broad range of appalling behavior in federal sex crimes. Ms. Graybeal's conduct, while criminal and immoral, is relatively more limited in nature. Essentially, the offense consists of Ms. Graybeal engaging in sexualized chats about her children and producing and distributing three nude images of images of them for financial payment on several days. Despite online communications advertising sexual acts with her children, she did not commit any sexual acts on them. She possessed no other child pornography and has no sexual interest in children. Her parental rights have been terminated.

Providing Ms. Graybeal's historical and situational context to her crimes should not diminish her sincere acceptance of responsibility and remorse for exploiting her children. The backdrop of Ms.

Page 1 of 8

Graybeal's offense entails her growing up and residing in a ███████████████ home[1] with intergenerational ████████████████████, and economic deprivation. ████████████ intervened in her family numerous times from when Ms. Graybeal herself was a minor and through her parental rights termination. Ms. Graybeal was unfit to be a mother not because of character flaws but for remaining in and succumbing to a ██████████ environment. She has impairments in ████████████████████████████████████ See Exhibit A, Psychological Evaluation. At her lowest point, she gained money for her drug addiction and various necessities by selling herself and exploiting her children. Since arrest, she has begun working on her recovery and is determined to keep improving herself.

Fifteen years is enough to punish her for her conduct towards her children while accounting for the relatively limited nature of the conduct, the circumstances of Ms. Graybeal's ███████████ ████████ and the ██████ complexities documented in the attached psychological evaluation.[2]

## Ms. Graybeal's History and Characteristics:

As the attached psychological evaluation (Exhibit A) provides extensive detail about Ms. Graybeal's history and circumstances, a condensed overview is provided here.

Ashley Graybeal was born in 1999 but developmentally is closer to a teenager at sentencing. As discussed in the psychological evaluation and the PSR, Ms. Graybeal was born to ███████ ████████████████████████████████████████████, of whom Ashley was the middle child. ██████████████████████████████████████████ ███████████████████████████. Daily life in the ███████████████ ██████████████████████████████████ Except for a brief period, Ashley never left her parents' home until her arrest here.

Ashley lacked dependable ██████████ on the most essential levels. Since childhood, Ashley has had a complicated relationship with ████████████████████ Emotionally, the two are more like ████████████████████████████████████████████ relationship. Before Ashley was 10 years old, ██████████████████████ While her ████████████████████████████ did little to address the confusing fallout from ███████████. Although Ashley's ████████████████████ came too late for Ashley; ████████████████████████ during her incarceration. ████████████████████████████████████ Ashley is relatively alone in the world and deeply desires positive role models.

During childhood, Ashley frequently was bullied and avoided school attendance. ██████████ ████████████████████████████ When attending school, Ashley struggled academically, likely due partly to ██████████████████████ With inadequate ██████████ Ashley never

---

[1] After drafting this letter, on May 20, 2026, the Defense received the prosecution's ██████████ ████████████████████████████████████████████████████████████████████████████████

[2] At sentencing, the Defense asks that the PSR be updated to include ████████████████████ █ ████████████████████████████████████████████████████████████████████████ See Exhibit A, Psychological Evaluation at 12-13.

learned basic lessons like proper ███████████                      Indeed, her ███████        was so poor that nearly all ████████████████████

████████████████████          In turn, as another example of ███████████ Ashley let ██████████████████████████████████████████

███████████           is widespread in Ashley's ███████   It extends beyond her ███████████  Ashley, like ████ ██████ spent most days pursuing ██████████████████  Disturbed by the ugliness of ██████████             Ashley chased █████    instead and has been on ██████████████████ for many months due to the severity of her addiction history.

The extensive distress in Ashley's life is explicated in the attached psychological evaluation, Exhibit A, at page 12:

███████████████████████████████████████████████████████████

Ashley's disordered ████████   impacted her self-worth, the figures she attached to, and life decisions. Without justifying her crime, her ████████  formed the backdrop of Ashley's troubled decisions underlying her offense.

## The Offense:

Ashley stooped to desperate and degrading levels for money. She and the ████████████ existed in an ████ relationship, placing ████ drug needs before ████ children - frequently purchasing drugs, and then having insufficient funds for necessities. Indeed, household items were often sold for drugs. Ashley displayed the dishonesty and dysfunctionality of addict behavior in begging for money online and in phone communications – pleading for money, for food, for help. Sickly from addiction and a fractured self-image, Ashley eventually coaxed money out of men online by sending sexual images of herself, sometimes with ████████.

Years into her addiction, she sunk lower from neglectful parenting to exploiting her own kids. In the midst of online communications with three strangers over the Kik platform (usernames: ███████████████████████████████████, the individuals expressed interest in sexual images of Ashley's children and asked her to perform sexual acts on the kids. In her communications, Ashley was intent on getting monetary payments. Should the Court wish to review more detailed descriptions of her communications with the usernames, an FBI report is attached as Exhibit B.

Ashley negotiated payments before sending the following images constituting child pornography of her son, born in 2018, and daughter, born in 2020, to ███████████

~ Image f95f677.jpg of Ashley standing nude in the shower next to her nude daughter, sent in a private chat on February 8, 2025, at 03:32:53 UTC.

~ Image 14c7a1c.jpg of Ashley from the neck down standing nude in the shower with her nude son, sent in a private chat on February 12, 2025, at 1:42:46 UTC.

~ Image fe941d20.jpg of Ashley's children lying nude on their backs in the bathtub, sent in a private chat on February 12, 2025, at 1:48:55 UTC.

As the above usernames and an additional username of ███████████ communicated with Ashley about performing various sexual contact acts on her children or having them watch her engage in sexual acts, Ashley responded with sexualized talk but never performed the requested sex acts on or in front of her children. To suggest otherwise is speculative and not grounded in the objective evidence.

Although there is a line Ashley would not cross, her conduct is abhorrent. Though she stopped short of more egregious conduct involving sexual contact offenses on her children, she still exploited her children for her own benefit, as she writes in her letter to the Court (Exhibit C):

I failed to fufill the role God placed me on earth to cary out as a mom i was hurting and my hurt caused harm to my childrent my life choices caused trauma to my childrent. While i often have felt a sense of neglect and wanting to be accepted by others, i never wanted my childrent to experience or feel the level of hurt that i have caused.

**<u>Why 15 years' incarceration is sufficient under the § 3553(a) factors:</u>**

Countless individuals grow up in dysfunctional homes with intergenerational damage, and thousands of moms are drug addicts who will sell their bodies to support their habit, but most of these individuals never cross the line into exploiting their children online. Ashley did. And for her offense, she is going to be punished with a federal felony sex offense conviction, extensive prison time, and sex offense supervision and registration requirements. Long before she appears for federal sentencing, Ashley failed as a mother. ████████████████████ ██ appropriately took away her children, who thankfully appear finally to be thriving with ████████ ████████████████ in a much-improved home environment. For her conduct, Ashley lost her freedom and her family.

As morally depraved as it is to engage in sexual communication about one's children and distribute nude images of them to strangers for pitiful payment amounts, the appropriate punishment must reflect that the offense activity was limited performatively, temporally, and numerically. Unlike many defendants, Ashley did not do more than photograph her children nude for payment in sexual chats. Consequently, a sentence at the mandatory minimum reflects the seriousness of the offense and provides just punishment. A sentence of 15 years fits the crime without diminishing its nature. It also does not result in sentencing disparity, and certainly not unwarranted disparity.

The sentence must also reflect that, in contrast to many, if not most sex offense defendants, there is no evidence that Ashley has any sexual interest in children. Indeed, the prosecution has never suggested such. Law enforcement scoured her devices and online accounts and found no evidence of a sexual interest in children – no other child pornography, nor disturbing online search terms for child sexual abuse material. She does not have a psychosexual disorder; she had an addiction disorder. But dissimilar from many drug addicts, her record is devoid of the recurrent criminal justice contacts we often see stemming from long-term, severe drug addiction. Her lack of any significant criminal record combined with her lack of any sexual interest in children means that incapacitation for longer than the mandatory minimum should not drive the sentencing outcome.

For any individual considering sexual misconduct against their children, a sentence of 20 years will not deter them any more than a sentence of 15 years. The conduct itself is morally wrong to such a degree that a parent's morality alone should inhibit offense behavior. For those for whom it does not, any time over 15 years has no realistic deterrence impact.

In considering the need for treatment in the most effective manner, it is undeniable that Ashley has multi-faceted treatment needs. Ashley's trauma and addiction history should be addressed through trauma-informed therapy, as discussed in the attached psychological evaluation at pages 14-15, which should begin during her incarceration and continue in an outpatient setting upon release.

Importantly, as discussed in her letter, Ashley recognizes the wrongness of her conduct and that she made the choices that harmed her children. *See* Exhibit C, Letter. She also recognizes that she must do the work to continue rebuilding her life. Just as Ashley's ██████████████████████ from an ████████████████████████, so did Ashley. Like her children, ████████████████ was necessary for Ashley to begin a multi-layered recovery.



**Supervised release term and conditions:**

The Court must impose a minimum of 5 years of supervised release. 18 U.S.C. § 3583(k). In determining the ultimate length of supervision, the requisite § 3553(a) factors the Court must consider weigh in favor of imposing no more than the mandatory minimum, particularly considering the limited offense conduct, the fact that Ms. Graybeal's children were removed from her custody, and that she does not have a sexual interest in children. *See* 18 U.S.C. § 3583(c).[3] Five years of supervision following 15 years of incarceration is sufficient to fulfill all sentencing goals, including the rehabilitative goal of supervision for a drug addict with a complex history.

Standing Order 2026-01 regarding supervised release conditions was issued on April 15, 2026, after the revised PSR was docketed. The Order's enumerated *mandatory* and *standard* conditions should be incorporated in the sentencing judgment for Ms. Graybeal rather than the longer standard conditions' version in the PSR. In conducting an individualized assessment of the appropriate *discretionary* supervision conditions to impose, the Court may impose further conditions that are reasonably related to the factors set forth in § 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D) and involve no greater deprivation of liberty than is reasonably necessary for the purposes enumerated in § 3553(a)(2)(B) (affording adequate deterrence to criminal conduct), (a)(2)(C) (protecting the public from further crimes of the defendant), and (a)(2)(D) (providing the defendant with needed treatment in the most effective manner). *See* 18 U.S.C. § 3583(d)(1)-(2).

Under the statutory constraints for discretionary conditions, the Defense objects to numerous recommended conditions in the PSR at pages 28-29 because they are not individualized to Ms. Graybeal and her offense, as outlined below.

#1, page 28: Prohibiting Ms. Graybeal from any communication or interaction with witnesses to the offense is too broad. The condition should be amended to read: *You must not communicate, or otherwise interact, with the victims (Minor 1 and Minor 2) in the instant offense, either directly or through someone else, without first obtaining the permission of the probation officer.*

#2, page 28: Prohibiting Ms. Graybeal from having direct contact with *any* minor child without first obtaining permission from the probation officer involves too great a deprivation of liberty than is reasonably necessary and should be struck. Ms. Graybeal's offense was grounded in addiction and destitution, and not a sexual interest in children.

#3, page 28: The condition prohibiting Ms. Graybeal from going to any place where minors are likely to be should also be struck for the same reasons as #2.

#4, page 28: The condition barring Ms. Graybeal from any employment or volunteer activity that would entail contact with minors without prior probation officer approval should also be struck for the same reasons as #2.

---

[3] "In determining the length of term and the conditions of supervised release, [a court] shall consider the factors set forth in 18 U.S.C. § 3553 (a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)."

#5, page 28: Given the limited nature of the conduct, prohibiting Ms. Graybeal from possessing any electronic device capable of creating photographic images without prior USPO approval entails too great a deprivation of liberty than is reasonably necessary given the limited nature of the conduct and the lack of any sexual interest in children.

#6-8, page 28: Because Ms. Graybeal did not access any child pornography other than the three images she produced and distributed, requiring the installation of computer monitoring software on any computer she uses (#6), and the submission of electronic devices/data/media to searches (#7), and allowing probation officers to conduct unannounced searches of computers (#8), all and each involve too great an encroachment on her liberty than is reasonably necessary. The breadth of these conditions extends beyond the limited nature of Ms. Graybeal's offense.

#11, page 29: Under condition #10, Ms. Graybeal must already follow the rules and regulations of a sex offense-specific treatment program. A specialized treatment provider should determine if accessing the material laid out in condition #11 will compromise her treatment. A blanket prohibition on images that are legal at this juncture is too great a deprivation of liberty and not grounded in an individualized treatment assessment.

#12, page 29: Polygraph testing for any purpose is invasive and has not been recommended by a treatment provider. Should a treatment provider believe that polygraph testing is needed for treatment purposes more than a decade from now following Ms. Graybeal's release, Probation may seek court order for administration. At this point, polygraph testing should not be ordered.

#13, page 29: A condition requiring access to and release of Ms. Graybeal's financial information is typically reserved for cases involving financial crimes or when restitution is ordered. Although Ms. Graybeal committed the offense for money, this is not a financial crime offense. The Defense has received no request for restitution. The condition should not be ordered.

#20, page 20: Pursuant to 18 U.S.C. § 3014(a), because Ms. Graybeal has been deemed indigent, she should not be ordered to pay any special assessment.

**<u>BOP facility and programming recommendation:</u>**

Ms. Graybeal requests a facility recommendation as close to Aberdeen, Maryland as possible. We request programming recommendations to include:[4]

- ~ Mental health, substance abuse, GED, and vocational programming.
- ~ Female Integrated Treatment (FIT) Program, which offers integrated cognitive behavioral therapy for substance use disorders, mental illness, and trauma-related disorders, as well as vocational training, to female offenders.
- ~ Resolve Program, which is a cognitive behavioral therapy program designed to address trauma-related mental health needs.

---

[4] BOP programming descriptions are available online at: https://www.bop.gov/inmates/fsa/docs/fsa-approved-program-guide.pdf?v=1.0.2 (last visited May 18, 2026).

~ Seeking Safety & Seeking Strength Program, which is an evidence-based approach to treat trauma symptoms and substance use concurrently.
~ UNICOR, which provides work skills for reentry.

We also request that the judgment reflect that Ms. Graybeal needs to be fitted for mouth dentures in BOP and a recommendation for pre-sentence confinement credit from March 28, 2025, when she was initially arrested for the underlying offense. PSR ¶ 94 (reflecting arrest for Docket No. C-12-CR-25-0363 in Harford County).

## Conclusion:

For the reasons stated here and to be discussed at the sentencing hearing, the sentence that is sufficient but not greater than necessary to fulfill sentencing goals is 15 years of incarceration followed by 5 years of supervised release.

Respectfully,

_____/s/_____
Sedira Banan (#804827)
Counsel for George Tomasack
Assistant Federal Public Defender
Email: Sedira_Banan@fd.org
Phone: (410) 962-3976

cc: Colleen McGuinn, Reema Sood, AUSAs
    Nicole Wonneman, USPO